**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| DUANE E. JENKINS,<br>　　　　Appellant, | DOCKET NUMBER<br>DC-1221-20-0415-W-1 |
| v. | |
| DEPARTMENT OF HOMELAND<br>　　SECURITY,<br>　　　　Agency. | DATE: July 2, 2024 |

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Nicholas Woodfield</u>, Esquire, Washington, D.C., for the appellant.

<u>Benjamin Owen</u>, Esquire, and <u>Daniel Piccaluga</u>, Esquire, Washington, D.C., for the agency.

**BEFORE**
Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner did not participate in the adjudication of this appeal.

**REMAND ORDER**

The appellant has filed a petition for review of the initial decision, which dismissed his individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review,

---

[1]A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

REVERSE the initial decision, and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

## BACKGROUND

The appellant is a GS-15 Supervisory Emergency Management Specialist for the agency's Federal Emergency Management Agency (FEMA), National Preparedness Directorate, Technological Hazards Division. Initial Appeal File (IAF), Tab 1 at 1, Tab 9 at 26.

The appellant stated below that one of the Technological Hazards Division's key programs is the Radiological Emergency Preparedness Program. IAF, Tab 1 at 8. Through this program, FEMA provides executable training, planning, and exercise guidance to state, local, and tribal governments. *Id*. The appellant is responsible for managing the program's funds, including its exercise support system, which is an information technology infrastructure that stores budget, cost, and performance data collected during radiological emergency drills. *Id*. In 2014, FEMA decided to consolidate its exercise support system into a single software platform, and the Associate Administrator for the National Preparedness Directorate tasked various officials, including the appellant, with assessing the agency's options. *Id*. at 8-9. It appears that the two primary contenders were Liferay (which was the current platform) and Salesforce. *Id*. at 9. After analyzing the options, the appellant and the Technological Hazards Division recommended Salesforce, but in September 2015, the Associate Administrator decided to use Liferay instead. *Id*. at 9-10. According to the appellant, this was the wrong decision because the Salesforce platform is faster, less expensive, and more secure. *Id*. Furthermore, the Associate Administrator had already directed the Technological Hazards Division to build out its own exercise system using Salesforce, so the division was forced to decommission this support system that it had just built and migrate back to Liferay. *Id*. at 11-12.

The appellant filed a whistleblower complaint with the Office of Special Counsel (OSC). *Id*. at 22-23. On January 30, 2020, OSC closed the appellant's file without taking corrective action. *Id*. On February 28, 2020, the appellant filed an IRA appeal and requested a hearing, claiming that the agency took several personnel actions against him in retaliation for various protected activities. *Id*. at 2, 6-15. Specifically, the appellant alleged the following six personnel actions: (1) a hostile work environment in early 2017, (2) a "continued" hostile work environment from 2017 through 2019, (3) a performance improvement plan (PIP) in December 2016, (4) a February 10, 2017 letter of reprimand, (5) lowered performance evaluations in February 2018 and February 2019, and (6) denial of reasonable accommodation in 2017 and 2018.[2] *Id*. at 12-16. He alleged that the agency took these actions in retaliation for the following activities: (1) a September 2016 disclosure to OSC alleging a gross mismanagement, abuse of authority, and a gross waste of funds in connection with the agency's selection of a software platform for its exercise system; (2) a July 26, 2016 complaint regarding the same matter to FEMA's Office of Fraud and Investigations and a related Inspector General (IG) interview later that fall; (3) a whistleblower retaliation complaint to OSC on an unspecified date; (4) a hostile work environment complaint to the agency's human resources department; and (5) a February 11, 2019 complaint to the FEMA Administrator alleging whistleblower retaliation. *Id*. at 11-16.

The administrative judge issued the standard acknowledgment order for an IRA appeal, notifying the appellant of his jurisdictional burden and instructing him to file evidence and argument on the issue. IAF, Tab 3. After the parties responded, the administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction. IAF, Tab 11, Initial Decision (ID). She found that the appellant exhausted some but not all of his claims before OSC, and that he

---

[2] In March 2017, the appellant was diagnosed with multiple sclerosis. IAF, Tab 5 at 4, 167.

failed, variously, to make nonfrivolous allegations that his disclosures were protected or that they were contributing factors in a personnel action. ID at 5-13.

The appellant has filed a petition for review, disputing the administrative judge's jurisdictional analysis. Petition for Review (PFR) File, Tab 1. The agency has responded to the petition for review, and the appellant has filed a reply to the agency's response. PFR File, Tabs 3-4.

## ANALYSIS

To establish Board jurisdiction over an IRA appeal, an appellant must show by preponderant evidence that he exhausted his remedies before OSC and make nonfrivolous allegations that (1) he made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in a protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶ 6 (2014); 5 C.F.R. § 1201.57(a)(1), (b), (c)(1). "[T]he question of whether the appellant has non-frivolously alleged protected disclosures that contributed in a personnel action must be determined based on whether the employee alleged sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1369 (Fed. Cir. 2020); *see* 5 C.F.R. § 1201.4(s) (reflecting that a nonfrivolous allegation is an assertion that, if proven, could establish jurisdiction over the matter at issue).

The appellant exhausted his administrative remedies with OSC as to some of his claims.

The appellant did not file a copy of his original OSC complaint or OSC's substantive determination letter. IAF, Tab 1 at 22-23. Accordingly, the only evidence of exhaustion in the record is contained in the appellant's declaration, a

subsequent letter from the appellant to OSC,[3] and the OSC close-out letter.  IAF, Tab 1 at 22-23, Tab 5 at 167-68, Tab 10 at 7-9.

As an initial matter, we must discuss the evidentiary value of the appellant's declaration.  In his response to the jurisdictional order, the appellant submitted an unsigned copy of the declaration.  IAF, Tab 5 at 27-29.  However, after the agency pointed out this error in its jurisdictional response, IAF, Tab 9 at 10, 14, the appellant supplemented the record, with the agency's consent, by submitting a signed copy of the declaration, IAF, Tab 10.  The administrative judge, however, found that the declaration was entitled to "very little weight" because only after the agency's jurisdictional response did the appellant submit "a newly signed version of the unsigned declaration he previously submitted."  ID at 8.  We disagree.  The declaration was not newly signed in response to the agency's jurisdictional pleading.  Rather, as the appellant stated below and confirmed on review by submitting a copy of an email exchange, he signed the declaration 3 days prior to submitting the jurisdictional response, but his representative inadvertently submitted an unsigned copy.  IAF, Tab 5 at 27-29, Tab 10; PFR File, Tab 1 at 29-30.  Once the agency pointed out this mistake, the appellant acted promptly to cure it.  We do not find it appropriate to discount the value of the appellant's declaration under these circumstances as something inherently untrustworthy or concocted after the fact.  *See Parbs v. U.S. Postal Service*, 107 M.S.P.R. 559, ¶ 18 (2007) ("Generally, a statement signed under penalty of perjury and not rebutted is competent evidence of the assertions contained therein."), *aff'd per curiam*, 301 F. App'x 923 (Fed. Cir. 2008).

Although she did not credit the allegations in the appellant's declaration, the administrative judge found sufficient evidence in OSC's close-out letter to

---

[3] The administrative judge declined to consider the appellant's subsequent letter to OSC, finding insufficient evidence that OSC ever actually received or considered this letter.  ID at 6-7; IAF, Tab 5 at 167-68.  However, as explained in paragraph 8 below, we credit the appellant's declaration and find it sufficient to show that he sent this letter to OSC as an amendment to his original complaint.  IAF, Tab 10 at 7.

show that he alleged before OSC that the agency retaliated against him by placing him on a PIP, issuing him a letter of reprimand, changing his duties, lowering his performance ratings, and creating a hostile work environment. ID at 6. The agency does not dispute these findings on review, and we find that they are supported by the record. IAF, Tab 1 at 29-30. The administrative judge also found that there was no evidence to show that the appellant exhausted his administrative remedies with respect to a denial of reasonable accommodation. ID at 6. However, based on the appellant's declaration, which we find to be competent evidence of the assertions contained therein, we find that the appellant did raise this matter before OSC. IAF, 5 at 167-68, Tab 10 at 8. We therefore find preponderant evidence that the appellant exhausted his administrative remedies with respect to each of the five personnel actions listed below.

As explained above, the appellant identified five different disclosures that he alleges were contributing factors in these personnel actions. However, we find that the appellant's first claimed disclosure is better analyzed as two separate disclosures. The appellant's description of this disclosure differs somewhat between his initial appeal filing and his response to the administrative judge's jurisdictional order; in the former, he describes it as a 2016 disclosure to OSC, but in the latter, he describes it as including previous disclosures to agency management as well. IAF, Tab 1 at 11-12, Tab 5 at 5-6. In her initial decision, the administrative judge analyzed this disclosure according to the narrower characterization in the initial appeal filing, but we find it more appropriate to consider the broader claim that the appellant articulated in his jurisdictional pleading. ID at 7. Because these disclosures were made to different people and are subject to coverage by different provisions of 5 U.S.C. § 2302(b), we consider them separately as alleged 2015 disclosures to agency management protected under 5 U.S.C. § 2302(b)(8)(A) and an alleged 2016 disclosure to OSC protected under 5 U.S.C. § 2302(b)(9)(C).

In her initial decision, the administrative judge found sufficient evidence in OSC's close-out letter to show that the appellant alleged before OSC that these personnel actions were in retaliation for reporting various types of wrongdoing in connection with the agency's selection and implementation of the Liferay exercise platform. ID at 6. We find that the evidence is sufficient to show that the appellant exhausted his administrative remedies with respect to his alleged disclosure, made several times to various agency officials in 2015, that, among other things, the agency wasted Government funds when it paid Liferay to develop a system that it had already paid another vendor to develop. IAF, Tab 1 at 11, Tab 5 at 36, Tab 10 at 7-8. The record also shows that the appellant exhausted his administrative remedies with respect to his internal complaint to FEMA's Office of Fraud and Investigation, which was subsequently referred to the agency's IG. IAF, Tab 1 at 22, Tab 10 at 8. However, we do not find any evidence that the appellant exhausted his administrative remedies with respect to his other alleged protected activities, i.e., his 2016 OSC disclosure, the OSC whistleblower retaliation complaint itself, emails he sent to an agency human resources official, and a February 11, 2019 email to the FEMA Administrator. IAF, Tab 1 at 11-12, 15-16. Therefore, we find preponderant evidence that the appellant exhausted his administrative remedies with respect to two of his alleged protected activities: his 2015 disclosures to various agency officials and his July 26, 2016 internal complaint to FEMA's Office of Fraud and Investigations, followed by his cooperation with an IG investigation.

<u>The appellant made a nonfrivolous allegation that his two exhausted disclosures were protected.</u>

Regarding his first exhausted disclosure, the record shows that, several times in 2015, the appellant disclosed to the Director, the Associate Administrator, and several other officials that, among other things, "spending funds to develop a system in Liferay after we just paid several million dollars to develop a system in Salesforce is a waste of government funds." IAF, Tab 5

at 36. According to the appellant, for reasons discussed in his 2014-2015 analysis, the agency's choice of Liferay over Salesforce would be "without any benefit." *Id*. at 10. Based on these facts, as presented by the appellant, we find that he made a nonfrivolous allegation that his 2015 disclosures were protected under 5 U.S.C. § 2302(b)(8)(A) because he reasonably believed that they evidenced a gross waste of funds.[4] *See Hessami*, 979 F.3d at 1369-70 (concluding that a petitioner nonfrivolously alleged that a reasonable person in her position could conclude that the prescription of a medical regimen that allegedly cost the agency hundreds of thousands of dollars more than less costly alternatives was a gross waste of funds). The administrative judge found that the appellant lacked a reasonable belief that his disclosure evidenced any category of wrongdoing, based on his statements in a November 30, 2015 email that "I do not and will not make any appearances of disputing or countermanding [the Associate Administrator's] decision," the incompleteness of the report upon which the Associate Administrator relied was a "disservice" to her, and "if I were in her position and not known any better, I would make the same decision." ID at 10-11; IAF, Tab 5 at 32-33. We disagree with the administrative judge. The reasonableness of an appellant's belief that his disclosure was protected is determined from the perspective of a reasonable person in his position. *Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶¶ 8-9 (2013). These conciliatory statements in the appellant's email about the quality of information provided to the Associate Administrator do not defeat his claim.

The appellant alleges that his second exhausted disclosure was a July 26, 2016 internal complaint to FEMA's Office of Fraud and Investigations. IAF,

---

[4] In light of this finding, we decline to reach the issue of whether the appellant made a nonfrivolous allegation that this disclosure also evidenced gross mismanagement or an abuse of authority, as he asserts. IAF, Tab 5 at 16; *see Bump v. Department of the Interior*, 69 M.S.P.R. 354, 361-62 & n.* (1996) (finding it unnecessary to determine whether an appellant established jurisdiction over his disclosures as evidencing gross mismanagement in light of the finding that the Board had jurisdiction over the same disclosures as evidencing a perceived regulatory violation).

Tab 5 at 6. The appellant included a copy of this complaint for the appeal file. *Id*. at 38-63. This disclosure contains, among other things, substantially the same allegations regarding a gross waste of funds as discussed above in connection with the appellant's first disclosure. *Id*. at 38-45. We therefore find that the appellant has also made a nonfrivolous allegation that this disclosure was protected under 5 U.S.C. § 2302(b)(8)(A).[5] The appellant also alleges that, in September 2016, the Office of Fraud and Investigations forwarded this complaint to the IG, which interviewed the appellant and the Associate Administrator. *Id*. at 6. We therefore find that the appellant has made a nonfrivolous allegation that, at this point, his activity also became protected under 5 U.S.C. § 2302(b)(9)(C). That provision identifies "cooperating with or disclosing information to" the IG as a protected activity.

In sum, we find that the appellant has made nonfrivolous allegations that his two exhausted disclosures were protected. Those disclosures are (1) disclosures in 2015 to the Director, the Associate Administrator, and several other agency officials evidencing a gross waste of funds under 5 U.S.C. § 2302(b)(8) (A), and (2) a July 26, 2016 internal complaint to FEMA's Office of Fraud and Investigations evidencing a gross waste of funds under § 2302(b)(8)(A),[6]

---

[5] This activity would clearly be protected under 5 U.S.C. § 2302(b)(9)(C) as currently enacted, as a disclosure to an agency "component responsible for internal investigation or review." However, at the time the appellant made this disclosure, coverage under 5 U.S.C. § 2302(b)(9)(C) was limited to communications with OSC or an IG of an agency. 5 U.S.C. § 2302(b)(9)(C) (2015) (amended in relevant part by the National Defense Authorization Act for Fiscal Year 2018, Pub. L. No. 115-91, § 1097(c)(1)(A), 131 Stat. 1283, 1618 (2017)). The subsequent amendments to this statute are not retroactive. *Edwards v. Department of Labor*, 2022 MSPB 9, ¶¶ 29-33.

[6] We do not make a determination here as to whether the appellant made either of his disclosures in the normal course of his duties. *See Williams v. Department of Defense*, 2023 MSPB 23, ¶¶ 9-12 (finding that a determination of whether a disclosure was made in the normal course of an appellant's duties should be made as part of an appellant's prima facie case after full development of the record, rather than at the jurisdictional stage of an IRA appeal).

followed by cooperation with the IG, protected under § 2302(b)(9)(C), about the same disclosure.

<u>The appellant has made a nonfrivolous allegation that the agency took or threatened to take five personnel actions against him.</u>

As stated above, the appellant has claimed six distinct personnel actions in this IRA appeal. However, we find it appropriate to consider the appellant's two hostile work environment claims together with his denial of reasonable accommodation claim as part of a single alleged personnel action. The Board has recognized that, under 5 U.S.C. § 2302(a)(2)(A)(xii), a hostile work environment may constitute a personnel action to the extent that it amounts to a significant change in duties, responsibilities, or working conditions. *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 23 (2015), *overruled in part on other grounds by Pridgen v. Office of Personnel Management*, 2022 MSPB 31, ¶¶ 23-25. Only agency actions that, individually or collectively, have practical and significant effects on the overall nature and quality of an employee's working conditions, duties, or responsibilities will rise to the level of a personnel action under § 2302(a)(2)(A)(xii). *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 16. It is not clear to us why the appellant has attempted to separate his allegations of a hostile work environment into two distinct personnel actions, especially considering that the claimed periods of hostile work environment are continuous, and such claims, by their very nature, involve repeated conduct, a single incident of which may not be actionable on its own. *Hamley v. Department of the Interior*, 122 M.S.P.R. 290, ¶ 7 (2015). We therefore find it appropriate to consider the appellant's hostile work environment claims together as a single allegation of significant change in duties, responsibilities, and working conditions.

Regarding the claimed denial of reasonable accommodation, such an action is not separately enumerated under 5 U.S.C. § 2302(a)(2)(A), and the appellant has not otherwise explained why he believes that it fits the definition of

"personnel action" under that subparagraph. *See Reid v. Merit Systems Protection Board*, 508 F.3d 674, 679 (Fed. Cir. 2007) (declining to consider a conclusory allegation of a denial of reasonable accommodation for a disability as a "personnel action"). Nevertheless, we find it appropriate to consider this matter as part of the appellant's allegations of a significant change in duties, responsibilities, and working conditions. *See Covarrubias v. Social Security Administration*, 113 M.S.P.R. 583, ¶ 15 n.4 (2010) (finding a nonfrivolous allegation of a significant change in working conditions based, in part, on disability discrimination), *overruled on other grounds by Colbert v. Department of Veterans Affairs*, 121 M.S.P.R. 677, ¶ 12 n.5 (2014).

Turning to the substance of the appellant's allegations, we find that some of them are too vague and conclusory to rise to the level of nonfrivolous allegations that would merit a finding of Board jurisdiction. *See Lewis v. Department of Defense*, 123 M.S.P.R. 255, ¶ 12 (2016) (finding that an appellant's allegations regarding a hostile environment and mismanagement were too vague and conclusory to rise to the level of nonfrivolous allegations that would merit a finding of the Board's jurisdiction). For instance, the appellant states that, in February 2018, Director 1 issued a memorandum outlining which of the appellant's requested accommodations had been granted, which had been denied, and which were still being considered, and that some of the contents of the memorandum were inaccurate.[7] *Id*. at 10. However, the appellant does not state which of his requested accommodations were denied or explain what was inaccurate about Director 1's memorandum. *Id*.

We find that some of the appellant's other allegations are more than conclusory and are sufficiently detailed to rise to the level of nonfrivolous. In

---

[7] The appellant's first- and second-line supervisors are the Deputy Division Director and Division Director, respectively. IAF, Tab 5 at 39. At some point (the record does not reveal exactly when), both of these positions changed hands. We refer to the incumbents of these positions as Deputy Directors 1 and 2 and Directors 1 and 2, in order of their tenure.

particular, the appellant alleges that the agency reorganized his department to remove two components from his supervision, thereby depriving him of human resources and administrative support staff. IAF, Tab 5 at 7; *see McDonnell v. Department of Agriculture*, 108 M.S.P.R. 443, ¶ 23 (2008) (finding that the appellant made a nonfrivolous allegation of a significant change in duties, responsibilities, or working conditions in connection with an alleged undermining of her supervisory authority). The appellant also alleges that "he was excluded from performing several of his previous work duties," including the Division's budget responsibilities. IAF, Tab 5 at 7, 167; *see Askew v. Department of the Army*, 88 M.S.P.R. 674, ¶ 24 (2001) (finding that the removal of significant duties is a personnel action). Considering these matters in conjunction with the appellant's other specific allegations, including that the agency began denying him routine travel requests and Director 1 and Deputy Director 1 became confrontational towards him during routine work meetings, we find that the appellant has made a nonfrivolous allegation that, in the aggregate, the agency subjected him to a significant change in duties, responsibilities, or working conditions.[8] IAF, Tab 5 at 18-19, 21, 167-68.

The appellant's remaining claimed personnel actions clearly fall under 5 U.S.C. § 2302(a)(2)(A). The Board has found that placement on a PIP, by definition, involves a threatened personnel action, such as a reduction in grade or a removal, and is therefore within the Board's IRA jurisdiction. *Gonzales v. Department of Housing & Urban Development*, 64 M.S.P.R. 314, 319 (1994). In addition, a letter of reprimand is a "disciplinary or corrective action" under 5 U.S.C. § 2302(a)(2)(A)(iii). *Gonzales*, 64 M.S.P.R. at 319. Furthermore, 5 U.S.C. § 2302(a)(2)(A)(viii) specifically includes a performance evaluation under the definition of "personnel action." *Gonzales*, 64 M.S.P.R. at 319. Although the appellant lists his February 2018 and February 2019 performance

---

[8] In considering the appellant's alleged hostile work environment on the merits, the administrative judge must consider the agency's actions both individually and collectively. *Skarada*, 2022 MSPB 17, ¶ 16.

evaluations as a single personnel action, we find that they are separate personnel actions taken at different times by different officials and that they should be analyzed as such. For these reasons, we find that the appellant has made nonfrivolous allegations that the agency imposed the following personnel actions or threatened personnel actions upon him: (1) A significant change in duties, responsibilities, and working conditions beginning in 2017, (2) a December 2, 2016 PIP, (3) a February 10, 2017 letter of reprimand, (4) an unfavorable performance evaluation in February 2018, and (5) an unfavorable performance evaluation in February 2019.

The appellant made a nonfrivolous allegation that his protected activity was a contributing factor in some of the personnel actions.

The most common way of proving the contributing factor element of a whistleblower claim is the knowledge/timing test. *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 27 (2013). Under that test, an appellant can prove that his disclosure was a contributing factor in a personnel action through evidence that the official taking the personnel action knew of the protected disclosure or activity and took the personnel action within a period of time such that a reasonable person could conclude that the disclosure or activity was a contributing factor in the personnel action. 5 U.S.C. § 1221(e)(1); *Chavez*, 120 M.S.P.R. 285, ¶ 27. However, even if the knowledge/timing test is not satisfied, an appellant can still prove contributing factor by alternative means. In that case, the Board will consider other evidence, such as that pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the proposing or deciding officials, and whether those individuals had a desire or motive to retaliate against the appellant. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 15 (2012).

As the first step of our contributing factor analysis, we will identify the officials who were involved in the alleged personnel actions at issue. The appellant alleged that the hostile work environment (significant change in duties,

responsibilities, and working conditions) was perpetrated by Director 1 and Deputy Director 1. IAF, Tab 5 at 18-21. The appellant did not provide a copy of the PIP notice, and he did not specifically identify the official who decided to place him on a PIP. However, we take notice that a PIP would normally be implemented by an employee's direct supervisor, and it would be very unusual for PIP proceedings to begin without a supervisor's input. We therefore infer that Deputy Director 1, Director 1, or both were involved in the decision to place the appellant on a PIP in December 2016. *See Cahill v. Merit Systems Protection Board*, 821 F.3d 1370, 1374-75 (Fed. Cir. 2016) (finding a nonfrivolous allegation of contributing factor by drawing likely inferences appropriate to the context of the appellant's allegations).

The record shows that the February 10, 2017 letter of reprimand was issued by Deputy Director 1. IAF, Tab 5 at 163-66. The appellant alleges that his February 2018 performance evaluation was issued by Deputy Director 1 and Director 1, his first- and second-line supervisors, as would be expected. *Id*. at 9. Finally, the appellant alleges that his February 2019 performance evaluation was issued by Deputy Director 2 and Director 2. *Id*. It therefore appears that, with the exception of the February 2019 performance evaluation, Director 1 and Deputy Director 1 were the officials responsible for taking all of these claimed personnel actions. In addition, the appellant alleges that the Associate Administrator was partially responsible for the significant change in duties, responsibilities, and working conditions because she was involved in denying some of his travel requests. IAF, Tab 1 at 7-8.

We next determine whether the appellant has made a nonfrivolous allegation that his first disclosures in 2015 were a contributing factor in any of these personnel actions. The appellant specifically alleged that he made these disclosures to Director 1, Deputy Director 1, the Associate Administrator, and various other agency officials. IAF, Tab 5 at 5, 16. This allegation is supported by evidence in the form of copies of emails between the appellant and Deputy

Director 1, dated late November and early December 2015. *Id*. at 31-37. We find that, under the knowledge/timing test, the appellant has made a nonfrivolous allegation that his 2015 disclosures were a contributing factor in the December 2, 2016 PIP, the February 10, 2017 letter of reprimand, and those aspects of the significant change in duties, responsibilities, and working conditions that occurred through the end of 2017. *See Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 21 (2015) (finding that a personnel action taken within approximately 1 to 2 years of the appellant's disclosures satisfies the knowledge/timing test).

As for the February 2018 performance evaluation and subsequent changes in duties, responsibilities, and working conditions, considered in isolation, these would likely be too remote to draw an inference of contributing factor under the knowledge/timing test. *See Salinas v. Department of the Army*, 94 M.S.P.R. 54, ¶ 10 (2003) (finding that a period of more than 2 years between an alleged disclosure and the alleged personnel actions was too remote to satisfy the knowledge/timing test). However, to the extent that these personnel actions can be viewed as a continuation of the earlier personnel actions, the appellant could satisfy the contributing factor element. *See Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶¶ 22-23 (2013) (finding that personnel actions taken more than 2 years after the protected disclosure satisfied the knowledge/timing test when they were part of a continuum of related performance-based personnel actions, the first of which occurred within 2 years of the disclosure). Resolving all doubts and drawing reasonable inferences in the appellant's favor at this jurisdictional stage, we find that he has made a nonfrivolous allegation that his 2015 disclosures were a contributing factor in these later actions as well.

As for the February 2019 performance evaluation, the appellant alleged that Director 2 and Deputy Director 2 were aware, "either directly or institutionally," of his disclosures. IAF, Tab 1 at 19. He offers no explanation of how these two officials might have come to know of his disclosures or why he thinks that they

did. We find that this conclusory allegation does not satisfy the nonfrivolous standard of 5 C.F.R. § 1201.4(s). Nor has the appellant alleged that Director 2 or Deputy Director 2 were influenced in their decision by anyone with actual knowledge of his disclosures. *Cf. Aquino v. Department of Homeland Security*, 121 M.S.P.R. 35, ¶ 19 (2014) (finding that an appellant may establish an official's constructive knowledge of a protected disclosure by demonstrating that an individual with actual knowledge of the disclosure influenced the official accused of taking the retaliatory action).

Because the appellant has not satisfied the knowledge element of the knowledge/timing test with respect to his February 2019 performance evaluation, we will consider other evidence to determine whether the appellant has made a nonfrivolous allegation of contributing factor. *See Dorney*, 117 M.S.P.R. 480, ¶ 15. However, the appellant has presented no evidence or allegations to cast doubt on the strength of the agency's reasons for his February 2019 performance evaluation; he has not even submitted a copy of that evaluation for the record. Nor is there any indication that Director 2 or Deputy Director 2 were personally implicated in the appellant's 2015 disclosures. In fact, there is no evidence that these two officials had any involvement with FEMA whatsoever until they were appointed to their new positions years later. Finally, in the absence of any indication that these officials had knowledge, or were influenced by individuals with knowledge, of the appellant's disclosures, there can be no inference of retaliatory motive on their part. *See Geyer v. Department of Justice*, 70 M.S.P.R. 682, 693 (1996) (observing that disclosures of which a deciding official has neither knowledge nor constructive knowledge cannot contribute toward any retaliatory motive on his part), *aff'd per curiam*, 116 F.3d 1497 (Fed. Cir. 1997) (Table). For these reasons, we find that the appellant has made a nonfrivolous allegation that his 2015 disclosures were a contributing factor in all the personnel actions at issue except for his February 2019 performance evaluation.

We now turn to the contributing factor element with respect to the appellant's July 26, 2016 complaint to FEMA's Office of Fraud and Investigations. The appellant alleges that the Associate Administrator was aware of this disclosure because the IG interviewed her about it later that year. IAF, Tab 5 at 6. The administrative judge, however, found that the appellant failed to make a nonfrivolous allegation of contributing factor with respect to this personnel action. ID at 9-10. Specifically, she found a lack of any evidence as to what information the Associate Administrator may have communicated to any manager responsible for taking a covered personnel action against the appellant. ID at 9.

As an initial matter, we find that the appellant has made a nonfrivolous allegation of contributing factor with respect to his significant change in duties, responsibilities, and working conditions to the extent that the Associate Administrator herself contributed to these by denying the appellant's travel requests. IAF, Tab 1 at 7-8. Furthermore, the administrative judge did not consider whether the appellant might have made a nonfrivolous allegation of contributing factor with respect to the Directors and Deputy Directors even absent a nonfrivolous allegation that they had knowledge of his July 26, 2016 disclosure. In this regard, we find little reason to doubt the agency's reasons for the actions it took. Neither the PIP notice nor the performance evaluations are contained in the record, and it is otherwise impossible for us to ascertain the agency's reasons for these actions. The letter of reprimand is contained in the record, but having reviewed it, we do not detect any impropriety. IAF, Tab 5 at 163-66. Deputy Director 1 quoted back to the appellant excerpts from several recent emails that the appellant had sent, characterizing them as "sarcastic, unprofessional, and inappropriate." *Id*. at 163-64. The appellant seems to contend that it was not inappropriate for him to call his supervisor "tone deaf," but even if we were to agree with the appellant (which we do not), he has not addressed the other seven

email excerpts underlying the reprimand, which appears to be generally well-founded on its face. IAF, Tab 5 at 8, 163-64.

As to the significant changes in duties, responsibilities, and working conditions, there is some reason to question the agency's sudden curtailment of the appellant's travel. In particular, the appellant asserts that the agency justified its denial of one travel request by calling the denial a reasonable accommodation. IAF, Tab 5 at 7-8, 10. However, the agency's stated reasons for its various other actions, such as removing the appellant's budgeting duties and reorganizing the Technological Hazards Division, are absent from the record. Without even knowing what the agency's stated reasons for these actions were, we cannot draw an inference that the reasons might have been pretextual.[9] Nevertheless, other evidence weighs in favor of finding contributing factor. Specifically, both Director 1 and Deputy Director 1 were directly implicated in the appellant's July 26, 2016 disclosure. The appellant named them and criticized them harshly for misrepresenting the truth and "playing active and complicit roles in covering up" the matters he was reporting. *Id*. at 38, 44-46. The lack of any evidence or specific allegation that these officials knew about this disclosure prevents us from inferring retaliatory motive, but we note that the agency informed the appellant of its first personnel action, the impending PIP, in the fall of 2016, right around the time that the IG allegedly interviewed the Associate Administrator. IAF, Tab 5 at 6, 8. Resolving any doubts about this matter in the appellant's favor, we find that the circumstantial evidence is sufficient to raise an inference that the appellant's July 26, 2016 disclosure was a contributing factor in the alleged significant changes in duties, responsibilities, and working conditions, the PIP, the letter of

---

[9] Nothing in this order should be taken as a finding relevant to "the strength of the agency's evidence in support of its action" for purposes of assessing the agency's affirmative defense under *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). Not only might some additional evidence on this matter come to light as the appeal progresses, but the burden on the affirmative defense lies with the agency rather than the appellant. 5 U.S.C. § 1221(e)(2); *Siler v. Environmental Protection Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018); 5 C.F.R. § 1209.7(b).

reprimand, and the February 2018 performance evaluation. However, because neither Director 2 nor Deputy Director 2 were directly implicated in this disclosure, and the personnel action that they took was relatively remote in time, we do not find a nonfrivolous allegation of contributing factor with respect to the February 2019 performance evaluation.

This appeal is remanded for adjudication of the merits.

Because the appellant proved that he exhausted his administrative remedies as set forth above, and made nonfrivolous allegations that he made protected disclosures that were a contributing factor in several personnel actions, he has established jurisdiction over his appeal and is entitled to the merits hearing that he requested. IAF, Tab 1 at 2; *see Herman v. Department of Justice*, 115 M.S.P.R. 386, ¶¶ 6-8 (2011). On remand, the administrative judge shall afford the appellant an opportunity to prove by preponderant evidence that his 2015 disclosures and July 26, 2016 disclosures were a contributing factor in the PIP, the letter of reprimand, the February 2018 performance evaluation, and a significant change in duties, responsibilities, and working conditions. *See Runstrom v. Department of Veterans Affairs*, 123 M.S.P.R. 169, ¶ 12 (2016). If the administrative judge finds that the appellant proved his case in chief, she must determine whether the agency has proved by clear and convincing evidence that it would have taken these same personnel actions even in the absence of the appellant's disclosures. *See id*.

**ORDER**

For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.

*Gina K. Grippando*

FOR THE BOARD:                   _____
                                 Gina K. Grippando
                                 Clerk of the Board

Washington, D.C.